UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ONEIDA TRIBE OF INDIANS OF WISCONSIN,

        Plaintiff,

v.                                                  Case No. 05-C-0177

LESTER HARMS d/b/a WORLDSHADOW,

        Defendant.

---

DECISION AND ORDER

---

      The Oneida Tribe of Wisconsin sued Lester Harms for trademark, unfair competition, and cybersquatting offenses. Defendant Harms filed a counterclaim in which he claims that Plaintiff Oneida Tribe of Indians of Wisconsin's complaint is a retaliatory action and a malicious prosecution. He seeks $25,000,000 in damages as well as a declaratory ruling. The case is presently before me on the Oneida Tribe's motion to dismiss Harms' counterclaims under Fed. R. Civ. P. 12(b)(6). For the reasons set forth, the motion will be granted.

**I. Standard of Review**

      A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the pleading to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Dismissal of an action under such a motion is warranted if the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The essence of a Rule 12(b)(6) motion is not that the

plaintiff has pleaded insufficient facts, it is that even assuming all of his facts are accurate, he has no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). As applied here, these principles mean I must accept the allegations in the defendant's counterclaims as being true and determine whether those allegations state a claim. Federal notice pleading requires only that a claim be set out in a "short and plain" statement providing the opposing party with fair notice of her claim; fair notice does not require every element of a legal theory to be specifically set forth. *Scott*, 195 F.3d at 951. Conclusions or vague language are acceptable so long as the opposing party (and the court) can understand the claim. *See Muick v. Glenayre Elecs.*, 280 F.3d 741, 744 (7th Cir. 2002). "[D]ismissal of a suit for failure to state a claim is always with prejudice and so always precludes reinstatement." *Walker v. Thompson*, 288 F.3d 1005, 1009. With these principles in mind, I now turn to the facts alleged in the complaint and in the defendant's counterclaim.

## II. Factual Allegations

The Oneida Tribe is the owner of the trademarks ONEIDA, ONEIDA ONE STOP, and the ONEIDA Logo, among other names and marks incorporating the word "Oneida." (Compl. ¶ 5.) The Oneida Tribe also owns a federal trademark application Serial No. 75/575,398 for the Oneida Logo, which has been approved for registration, for casinos, hotel and restaurant services, retail and commercial printing and graphic art design services, retail store services featuring convenience store items and gasoline. (*Id.* ¶ 6.) The Oneida Tribe has continuously used the ONEIDA trademark in commerce in connection with the offering of these goods and services for over ten years. (*Id.* ¶ 11.)

2

The Oneida Tribe has used the "Oneida Tribe" name continuously since the Tribe's establishment in 1838. (*Id.*)

On or about November 12, 2003, Harms registered the domain name www.oneidatribe.com. (*Id.* ¶ 14.) As part of this registration, Harms agreed to resolve domain-name disputes brought by third parties in accordance with the Uniform Domain Name Dispute Resolution Policy ("UDRP") adopted by Internet Corporation for Assigned Names and Number ("ICANN"). (Am. Answer.) This registration was not authorized by the Oneida Tribe. (Compl. ¶ 14.) Prior to June 23, 2004, the website displayed the name "The Oneida Tribe" at the tope of the page and displayed the Oneida Tribe Logo. (*Id.*) The website also contained content critical of the Oneida Tribe. (*Id.*)

On or about June 23, 2004, the Oneida Tribe sent correspondence to Harms objecting to his use and registration of www.oneidatribe.com and demanding that he relinquish that domain name to the Oneida Tribe. (*Id.* ¶ 15.) Harms refused to relinquish the domain name. (*Id.*) After the request, Harms changed the content of the website by removing the critical content and by offering web design services. (*Id.* ¶ 16.)

On or about August 27, 2004, the Oneida Tribe submitted a complaint to the National Arbitration Forum against Harms according to ICANN's UDRP. (Am. Answer.[1]) In the complaint, the Oneida Tribe sought to have the domain name's registration transferred from Harms to the Oneida Tribe. (*Id.*) The Forum panelist ruled that the Oneida Tribe had failed to meet its burden and denied relief. (*Id.*)

---

[1]Harms is proceeding pro se; he has filed a document called "Response brief Amended Pleadings" which I construe as being his amended answer and counterclaims. Because this amended pleading contains the same defects as the first, the motion to dismiss applies to this pleading as well.

On or about February 14, 2005, after being denied relief by the panelist, the Oneida Tribe filed a complaint seeking the transfer of the domain name from Harms to the Oneida Tribe and injunctive relief, together with costs and attorneys fees. On or about April 22, 2005, Harms filed an answer to the complaint and a counterclaim. On or about May 10, 2005, the Oneida Tribe filed a motion to dismiss the Harms' counterclaims.

### III. Analysis

The Oneida Tribe's motion to dismiss the Harms' counterclaims raises two theories for the court to analyze: first, that Harms' counterclaims should be dismissed because they are not sufficiently well-pled, and second, that the Oneida Tribe's conduct, which is the subject of the counterclaims, is protected by the *Noerr-Pennington* doctrine.

Harms' counterclaims are scattered and largely unclear. However, a *pro se* litigant's complaint should be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A liberal reading of Harms' counterclaims indicate that he seeks damages based on the Tribe's filing of this lawsuit, which he alleges is malicious prosecution, retaliatory, and caused him to be defamed and to suffer pain and suffering. These theories are based on the Oneida Tribe filing this complaint after receiving an unfavorable ruling on its ICANN complaint. While the claims lack in merit, they are at least intelligible and may be dealt with on their merits and not merely on procedural grounds. Accordingly, I will proceed to address Tribe's arguments based on the *Noerr-Pennington* doctrine.

The *Noerr-Pennington* doctrine has its basis in antitrust law. In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc,* 365 U.S. 127 (1961), the Supreme Court held that "the Sherman Act does not prohibit . . . persons from associating together in an attempt to persuade the

legislature or the executive to take particular action with respect to a law that would produce a restraint or monopoly." *Id.* at 136. "*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose." *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). The Court has extended this protection to the right to petition agencies and courts. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972). In other words, individuals could not be subject to antitrust liability for undertaking actions that are generally protected by the First Amendment. Thus, parties seeking redress in the courts generally have immunity through the *Noerr-Pennington* doctrine. *Id.*

The *Noerr-Pennington* doctrine has been extended in other ways since it was created. Immunity from tort claims, such as tortious interference and abuse of process has been granted under the doctrine. *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F.Supp. 2d 385, 392 (E.D. Va. 2002) (citations omitted). The immunity has also been extended to arbitration for domain name disputes. *See id.* at 393. The threat of a lawsuit is also protected under the *Noerr-Pennington* doctrine. *See Pennwalt Corp. v. Zenith Laboratories, Inc.*, 472 F.Supp. 413, 424 (E.D. Mich. 1979). A litigant is protected where "the mere act of pursuing a lawsuit causes harm." *Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co., Inc.*, 964 F.Supp. 624, 625. (D. Conn. 1997).

In this case, the Oneida Tribe has taken three actions against Harms, all of which are protected. First, the Oneida Tribe sent Harms a letter demanding that he transfer the domain name to it. A mere threat by the Oneida Tribe to protect its rights cannot give rise to a claim by Harms. Next, the Oneida Tribe sought relief via a ICANN UDRP complaint. The panelist ruled in favor of Harms and refused to grant a transfer order, the relief the Oneida Tribe sought. This decision is

5

not entitled any deference by this court. *See e.g. Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F.Supp. 2d 385, 389 n.5 (E.D. Va. 2002), *Parisi v. Netlearning, Inc.*, 139 F.Supp. 2d 745, 753 (E.D. Va. 2001), *Barcelona.com, Inc. v. Excedlentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 626 (4th Cir. 2003). In addition, since the Oneida Tribe is not bound by the UDRP, it was not required to bring this dispute to ICANN for resolution. *Parisi*, 139 F.Supp. 2d at 751. In any event, there is no indication that Oneida Tribe was doing anything other than exercising rights that are protected by the *Noerr-Pennington* doctrine.

Lastly, the Oneida Tribe has sought relief in this Court by filing a claim to protect its trademarks. Again, filing a federal complaint of this nature cannot be said to be retaliatory or malicious; indeed, it is activity protected by the *Noerr-Pennington* doctrine. Accordingly, Harms cannot bring any counterclaims based on any of the activity he complains the Tribe has undertaken.

Accordingly, for the reasons stated above, all of Harms' counterclaims must be stricken.

**SO ORDERED.**

Dated this   24th   day of October, 2005.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
